UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62448-CIV-BLOOM/VALLE

**ERIC WATKINS,**

        Plaintiff,

v.

**IVAN J. RAMIREZ,**

        Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction, ECF No. [57] (the "Motion"), seeking dismissal of Plaintiff's Amended Complaint, ECF No. [48] ("Compl."), pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6). The Court has carefully reviewed the Motion, the parties' briefs, the record, and the applicable law. For the following reasons, Defendant's Motion is **GRANTED**.

**I.    Background**

Plaintiff Eric Watkins ("Plaintiff"), proceeding pro se, filed an Amended Complaint on February 24, 2015, seeking monetary damages pursuant to 42 U.S.C. § 1983 against Defendant Ivan J. Ramirez ("Defendant") for alleged constitutional violations of the First Amendment, the Fourth Amendment, and the Fifth Amendment.[1] *See* Amended Compl. Plaintiff also seeks

---

[1] Plaintiff alleges a due process violation under both the Fifth and Fourteenth Amendments in his complaint, but references only a Fifth Amendment violation when discussing this same issue in his Response. *See* ECF No. [60] at 6. The Court finds that for this reason, and because Plaintiff's due process argument is more properly construed under the Fifth Amendment, it will analyze the violation as such.

declaratory relief pursuant to 28 U.S.C. § 2202 specifically for the alleged First Amendment violation.[2] *See id.* at 19-21.

Plaintiff's Complaint centers on an incident that occurred on the morning of May 10, 2013, when he entered a United States post office in Fort Lauderdale. *See id.* at 7. "While entering the post office and waiting in line for service [P]laintiff continued to sing an antigay song he was accustomed to singing in that post office and was singing prior to entering the post office. Shortly after [P]laintiff was call[ed] for service by the clerk, [P]laintiff explained to clerk that he was having problems with receiving mail at this mailbox particularly for two weeks prior and that he wanted to speak to a supervisor to see if there was a problem. The clerk told [P]laintiff to hold on and went to look for the supervisor. She then returned and told [P]laintiff to wait on the side of the clerk[']s counter until the supervisor arrived to speak to him. Plaintiff complied and stood to the far left of the clerk[']s counter out of the way of other patrons." *Id.* at 7-9.

Plaintiff continued singing the song as he waited – his own "improvised version" of reggae "superstar" Buju Banton's song entitled, Boom Bye Bye, modified with his own "antigay" lyrics – "for approximately one hour." *Id.* at 9. Plaintiff was still singing when, at that point, Defendant, along with two Drug Enforcement Administration ("DEA") agents, "attacked Plaintiff forcefully pushing him up against the counter without telling him he was under arrest or what he was being subdued for and without identifying themselves as law enforcement. Defendant Ramirez grabbed and twisted Plaintiff's right arm real hard behind his back forcing it upward to the center of his back. He then, willfully and excessively tightened and placed the

---

[2] Plaintiff alleges a violation under the Eighth Amendment for cruel and unusual punishment for injuries sustained during his arrest, but makes no mention of the Eighth Amendment in his Response to Defendant's Motion to Dismiss when discussing this same issue. *See* ECF No. [60] ("Pl. Resp.") at 9. As a result, the Court chooses to more properly construe this "excessive force claim" as one arising in the context of the Fourth Amendment.

2

restraint specifically on a healed surgical cut on plaintiff's right hand clearly above his wrist and visible to the [D]efendant. This placed [P]laintiff into immediate excruciating pain reinjuring the healed surgical cut. Plaintiff continues to experience pains to this date from the cut. The two DEA agents grabbed Plaintiff's left arm real hard forcing it behind his back and up the center of his back. They then excessively tightened the restraints on [P]laintiff's left wrist. Plaintiff was also in a lot of pain from his left wrist." *Id.* at 9-11.

After the Plaintiff was in handcuffs, Ramirez and the agents "walked [P]laintiff outside the post office and sat him down on [a] concrete bench." *Id.* at 11. Plaintiff remained in "excruciating plain" as the Defendant and DEA agents "took their time discussing whether to loose[n] the cuffs." *Id.* Eventually, they "grabbed [P]laintiff's right hand at the restraints and willfully applied pressure at the cuff and surgical cut," causing Plaintiff so much pain that he "wanted to scream." *Id.* at 13. One of the DEA agents "then proceeded to remove the cuffs but did so slowing moving the cuff up and down on [P]laintiff's cut causing more pain." *Id.*

When the cuffs were finally released, "Plaintiff continued to complain of the pain from the tightness of both restraints on both wrist[s] but was ignored. The Defendant and the two DEA agents then interrogated Plaintiff regarding the antigay song for 45 minutes." *Id.* After this questioning, Defendant "decided to permanently suspend [P]laintiff from patron[iz]ing the post office via trespassing" and "ordered Plaintiff to hand over Plaintiff's two keys for his mailbox," which he did. *Id.* at 15. A Broward County Sheriff's officer (the "Officer") who arrived on the scene had Defendant "sign a paper that indicated that Plaintiff could never patron the post office again." *Id.* The Officer then told Plaintiff that if he "ever returned to the post office he could be arrested for trespassing." *Id.* When Plaintiff was allowed to leave, both of his wrists were "deeply blushed and engrave[d] with the shape of the hand cuffs. . . . The surgical cut on his

right hand was also swollen." *Id.* Plaintiff alleges that he "is still experiencing pain and sensitivity from the surgical cut," and that he "needs to see a Doctor regarding the reinjured cut, its sensitivity and pain but is unable to do so due to his lack of money or medical insurance." *Id.* There were numerous witnesses to the incident, which caused Plaintiff to feel "humiliated, embarrassed and degraded." *Id.*

## II. Legal Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). Although the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal

conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted). Pro se litigants are afforded a relaxed pleading standard. *See Abele v. Tolbert*, 130 F. App'x 342, 343 (11th Cir. 2005).

### III. Discussion

Defendant argues that Plaintiff's Amended Complaint should be dismissed for lack of personal jurisdiction due to improper service. *See* Motion at 1. Alternatively, Defendant argues that dismissal is proper because Plaintiff has failed to allege facts sufficient to establish any constitutional violation, entitling Ramirez to qualified immunity from suit. *See id.* Ultimately, Plaintiff's Complaint is deficient because he has failed to state a claim for violation of the First and Fourth Amendments, and his Fifth Amendment claim is not yet ripe for review.

#### A. The Court has Personal Jurisdiction over Defendant

The federal rules provide that service can be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1), (e)(1). "[A] party must have appointed his attorney as his agent for service of process before personal jurisdiction is obtained over the party by service on his attorney." *Durbin Paper Stock Co. v. Hossain*, 97 F.R.D. 639, 639 (S.D. Fla. 1982) (finding effective service where summons and complaint were delivered to defendant's attorney where defendant authorized attorney to accept service of process on his behalf); *see Moore v. McCalla Raymer, LLC*, 916 F. Supp. 2d 1332, 1340 (N.D. Ga. 2013) ("Service upon counsel is ineffectual, unless the party has appointed his attorney his

agent for service of process.") (quoting *Miree v. United States*, 490 F. Supp. 768, 775 (N.D. Ga. 1980)).

On May 15, 2015, Assistant U.S. Attorney Wendy A. Jacobus filed a report, ECF No. [55] ("AUSA Report"), pursuant to the Court's order, which indicates that she is representing Defendant, though sued in his individual capacity, by way of a "full and traditional attorney-client relationship." AUSA Report at 2 (citing 28 C.F.R. § 50.15(a)(3)). The report further indicates that, although Defendant will not waive service of process, Defendant "has authorized *the undersigned Assistant U.S. Attorney to accept services of process on his behalf*." *Id.* (emphasis added). It explicitly provides that "[t]he undersigned Assistant U.S. Attorney will accept service of a summons directed to Inspector Ramirez and a copy of the Amended Complaint at the office listed below." *Id.*

Because Defendant authorized his attorney to accept service of process on his behalf, and in light of the fact that the summons and Amended Complaint are available electronically to Defendant's attorney via CM/ECF, the Court entered an Order on May 19, 2015, deeming service effective from the date of the Order. *See* ECF No. [56]. That Order remains in effect. In fact, Defendant concedes in its Motion that "Ramirez authorized the undersigned Assistant U.S. Attorney to accept service and provided the address of the U.S. Attorney's Office in Miami so service could be perfected." Motion at 11. Because service was valid, the Court has personal jurisdiction over Defendant in this action.

### B. Plaintiff Fails to State a Claim

Regardless, taking Plaintiff's allegations as true, Plaintiff has failed to state a claim against Defendant for violation of the First and Fourth Amendments.

#### 1. First Amendment

In addition to being an improvisational singer, Plaintiff is a repeat filer. The Eleventh Circuit recently issued an opinion involving Plaintiff where he sang the same "antigay song by superstar Reggea [sic] artist Buju Banton" while waiting at a post office. *Watkins v. U.S. Postal Employee*, No. 14-14608, 2015 WL 1963421, at *1 (11th Cir. May 4, 2015). In that case, as alleged by Plaintiff, an unidentified female postal employee denied him service and threatened to call the police if he did not leave the premises. *Id.* Here, Defendant Ramirez arrested Plaintiff while he was waiting in a post office near the clerk's counter. *See* Compl. at 9.

Both cases involve the same operative issue of speech regulation inside a Post Office. *See United States v. Kokinda,* 497 U.S. 720, 727 (1990) (plurality opinion) ("[R]egulation of speech activity where the Government has not dedicated its property to First Amendment activity is examined only for reasonableness."). Thus, the Eleventh Circuit has expressly precluded Plaintiff's First Amendment argument. *Watkins*, 2015 WL 1963421, at *1. "There is no support for the assertion that Watkins had a First Amendment right to sing *any* sort of song in the post office." *Id.* at *4 (emphasis added). Accordingly, Plaintiff's First Amendment claim is dismissed for failure to state a claim.

#### 2. Fourth Amendment

Defendant argues that he is entitled to qualified immunity with respect to Plaintiff's Fourth Amendment section 1983 claims for improper seizure and excessive force. He contends that, "under the facts alleged by Plaintiff, it was reasonable for Ramirez to approach the Plaintiff;

7

restrain his right hand; and interrogate Plaintiff for 45 minutes." Motion at 9. Further, he maintains that "since the use of force by [Defendant] was *de minimis*, he is entitled to qualified immunity and the excessive force claim should be dismissed." *Id.* at 10.

### a. Defendant is Entitled to Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F. 3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "This formulation of the qualified immunity inquiry is intended to protect government officials 'from undue interference with their duties and from potentially disabling threats of liability.'" *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (quoting *Harlow*, 457 U.S. at 806); *see also Jackson v. Humphrey*, 776 F.3d 1232, 1241-42 (11th Cir. 2015) ("The purpose for qualified immunity is to permit officials to act without fear of harassing litigation as long as they can reasonably anticipate before they act whether their conduct will expose them to liability."). The doctrine "'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Kingsland*, 382 F.3d at 1232 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)); *see also O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) ("To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting within the

8

scope of his discretionary authority.") (citation omitted); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009) (holding that once a defendant raises the issue of qualified immunity and demonstrates that the acts complained of were committed within the scope of his discretionary authority, "the burden then shift[s] to the [plaintiff] to show that qualified immunity should not apply because: (1) the officers violated a constitutional right; and (2) that right was clearly established at the time of the incident").

Postal Inspectors and other agents of the United States Postal Service designated by the Board of Governors to investigate criminal matters related to the Postal Service may "make arrests without warrant for offenses against the United States committed in their presence." 18 U.S.C. § 3061(a)(2). "Members of the U.S. Postal Service security force [] exercise the powers provided by 18 U.S.C. 3061(c)(2) and [are] responsible for enforcing [relevant] regulations . . . in a manner that will protect Postal Service property and persons thereon." 39 C.F.R. § 232.1(q)(1). The Supreme Court has upheld the constitutionality of a postal inspector's arrest of individuals believed to have violated 39 C.F.R. § 232.1. *See United States v. Kokinda*, 497 U.S. 720, 732-33 (1990) (upholding a post inspector's arrest of individuals "because solicitation is inherently disruptive of Postal Service's business"); *Adderley v. Florida,* 385 U.S. 39, 47 (1966) (upholding arrests and convictions of individuals who protested city policies on jail grounds).

It is undisputed that Defendant was a government official performing discretionary functions at the time of the conduct at issue. Therefore, the burden shifts to Plaintiff to overcome the qualified immunity defense by demonstrating Ramirez violated a constitutional right. If he can prove a violation of a constitutional right, then Plaintiff must then show that the right was clearly established at the time of the violation.

### b. Plaintiff has Failed to State a Fourth Amendment Violation

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009) (quoting U.S. Const. amend. IV).

### i. Improper Seizure

Not all interactions between law enforcement officers and the individuals they serve and protect implicate the Fourth Amendment. *See United States v. Jordan,* 635 F.3d 1181, 1185 (11th Cir. 2011). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that a 'seizure' has occurred." *Terry v. Ohio,* 392 U.S. 1, 19 n. 16 (1968). "There are three broad categories of police-citizen encounters for purposes of [the] Fourth Amendment analysis: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *United States v. Perez,* 443 F.3d 772, 777 (11th Cir. 2006).

Here, Plaintiff in effect alleges that Defendant Ramirez engaged in a *Terry* stop – a brief seizure. An investigatory or *Terry* stop "involves reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave." *Perez,* 443 F.3d at 777 (quoting *United States v. Espinosa-Guerra,* 805 F.2d 1502, 1506 (11th Cir. 1986)). "In order to justify an investigatory seizure, 'the government must show a reasonable, articulable suspicion that the person has committed or is about to commit a crime.'" *Allen,* 447 F. App'x at 120 (quoting *Perez,* 443 F.3d at 777). Reasonable suspicion "does not require officers to catch the suspect in a crime." *United States v. Acosta,* 363 F.3d 1141, 1145 (11th Cir. 2004). Instead, "[a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *United States v. Gordon,* 231 F.3d 750, 754 (11th Cir. 2000). Thus, while "reasonable

10

suspicion is a less demanding standard than probable cause, it requires 'at least a minimal level of objective justification for making the stop.'" *Allen,* 447 F. App'x at 120 (quoting *Jordan,* 635 F. 3d at 1186). "In determining whether there is reasonable suspicion to support the stop, [a court must] consider the totality of the circumstances in light of the officer's own experience and evaluate whether the officer can 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *United States v. Caraballo,* 595 F.3d 1214, 1222 (11th Cir. 2010) (quoting *United States v. Yuknavich,* 419 F.3d 1302, 1311 (11th Cir. 2005)).

### ii. Excessive Force

"Fourth Amendment analysis of intentional physical control by police officers in § 1983 cases alleging excessive force, '[a]s in other Fourth Amendment contexts,' is subject to an objective reasonableness inquiry: 'the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Carr v. Tatangelo*, 338 F.3d 1259, 1267 (11th Cir. 2003) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)); *see also Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (same). "Th[e Eleventh C]ircuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense. Because a police officer is entitled to use some force to arrest a suspect, the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) (quoting *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000)).

### iii. Application to the Facts Alleged Here

As noted above, the Eleventh Circuit has explained that, as a matter of law, "singing aloud disrupts the normal activity of the post office, irrespective of the song's content or the viewpoint contained therein." *Watkins*, 2015 WL 1963421, at *3. Clearly, singing aloud must also be considered inherently disruptive in the Fourth Amendment context.

Accordingly, under the facts alleged here, qualified immunity protects Defendant because Plaintiff has failed to allege a cognizable constitutional violation under a theory of improper seizure or excessive force based upon Defendant's actions. The Court need not address whether Plaintiff's performance in this particular case disrupted the post office facility, or whether Plaintiff's creative song lyrics presented a potential threat to determine whether Defendant's conduct was warranted. The statutory authority that regulates conduct on postal property is clear – because singing interferes with the property and persons of the Postal Service, Defendant's decision to arrest Plaintiff and remove him from the premises was reasonable.

Viewing the evidence in the light most favorable to Plaintiff, Defendant's proper seizure involved de minimis force. Plaintiff alleges that Defendant "forcefully pushed him up against the counter without telling him he was under arrest or what he was being subdued for and without identifying themselves as law enforcement. Defendant Ramirez grabbed and twisted Plaintiff's right arm real hard behind his back forcing it upward to the center of his back. He then, willfully and excessively tightened and placed the restraint specifically on a healed surgical cut on plaintiff's right hand clearly above his wrist and visible to the [D]efendant." Compl. at 9-11. Similar uses of force by law enforcement officers have been found by the Eleventh Circuit to be de minimis. *See, e.g.*, *Myers*, 713 F.3d at 1327-1328 (no excessive force where officer "grabbed [plaintiff] by the arm, forced him to the ground, placed him in handcuffs, and searched

12

him"); *Nolin*, 207 F.3d at 1255 (de minimis force where officer "grabbed [plaintiff] from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him"); *Woodruff v. City of Trussville*, 434 Fed. App'x 852, 853, 855 (11th Cir. 2011) (punching plaintiff in the face, forcefully removing him from his car, and slamming him onto the pavement, causing him to strike his head, was de minimis force); *Bryan v. Spillman*, 217 Fed. App'x 882, 886 (11th Cir. 2007) (pushing plaintiff against a car, holding his head against it, and conducting a "rough search" of his genitals was de minimis force); *cf. Reese v. Herbert*, 527 F.3d 1253, 1273-74 (11th Cir. 2008) (finding excessive force where plaintiff was charged only with nonviolently resisting arrest after officers "slung [plaintiff] against a wall in a choke hold, struck him, and then threw him to the ground . . . continued twisting his arm behind his back despite his repeated screams that they were breaking his arm, . . . applied a pressure point technique on his neck, and pepper-sprayed [him] in the face"). Additionally, "[w]hat would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time." *Cordoves v. Miami-Dade County*, 2015 WL 1131684, at *14 (S.D. Fla. March 12, 2015) (quoting *Rodriguez v. Farrell*, 280 F.3d 1341, 1353 (11th Cir. 2002).

Because Plaintiff has failed to establish a constitutional violation, the Court need not address whether the constitutional right at issue was clearly established under the qualified immunity doctrine. The facts as alleged by Plaintiff establish that Defendant is protected by qualified immunity for the alleged Fourth Amendment violation.

### C. Fifth Amendment

Plaintiff alleges that Defendant violated "his Fifth Amendment right to patron the U.S. post office and his due process rights to not be deprived of a liberty interest without due process of law – that is plaintiff's right to use the post office's services and his mail box." Compl. at 3. However, this issue is not ripe for review because Plaintiff has failed to allege any damages to his property or due process rights. Accordingly, this Court lacks jurisdiction to review Plaintiff's Fifth Amendment claim.

"Generally, 'a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Nat'l Parks Conservation Ass'n v. U.S. Dept. of Interior*, 46 F. Supp. 3d 1254, 1267 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). As the Supreme Court has ruled:

> [A] person deprived of property through a random and unauthorized act by a state employee does not state a claim under the Due Process Clause merely by alleging the deprivation of property. In such a situation, the Constitution does not require pre-deprivation process because it would be impossible or impracticable to provide a meaningful hearing before the deprivation. Instead, the Constitution is satisfied by the provision of meaningful post-deprivation process. Thus, the State's action is not 'complete' in the sense of causing a constitutional injury unless or until the State fails to provide an adequate post-deprivation remedy for the property loss.

*Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985). The ripeness inquiry, therefore, addresses the "timing of the suit." *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006).

"To determine whether a claim is ripe, [a count must] assess both the fitness of the issues for judicial decision and the hardship to the parties of withholding judicial review." *Harrell v. The Florida Bar*, 608 F.3d 1241, 1258 (11th Cir. 2010) (emphasis in original) (citing *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1315 (11th Cir. 2000)). The fitness prong is typically concerned with "questions of finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1291 (11th Cir. 2010). "The hardship prong asks about the costs to the complaining party of delaying review until conditions for deciding the controversy are ideal." *Harrell*, 608 F.3d at 1258.

Here, Defendant "permanently suspend[ed P]laintiff from patron[iz]ing the post office" and "ordered Plaintiff to hand over [his] two keys for his mailbox," which he did. Compl. at 15. Defendant then "sign[ed] a paper that indicated that Plaintiff could never patron the post office again." *Id.* Plaintiff, however, does not claim that he has been denied access to either the post office or his mailbox at any time after the complained of May 10, 2013 incident, and the resolution of this issue would depend entirely on whether Plaintiff has future access. No costs of delaying review of Plaintiff's allegations are evident until the Plaintiff determines if he is or is not allowed to enter the post office and open his mailbox. Therefore, Plaintiff's claim for a Fifth Amendment taking is not ripe for the Court's review, and must be dismissed for lack of subject matter jurisdiction.

### IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that

1. Defendant's Motion to Dismiss, **ECF No. [57]**, is **GRANTED** as set forth herein.
2. Plaintiff's Amended Complaint, **ECF No. [48]**, is **DISMISSED**, as follows:

    a. Plaintiff's claims for violation of the First and Fourth Amendments are **dismissed with prejudice** for failure to state a claim upon which relief can be granted.

    b. Plaintiff's claim for violation of the Fifth Amendment is **dismissed without prejudice** for lack of subject matter jurisdiction.

3. The Clerk is directed to **CLOSE** this matter. Any pending motions are **DENIED AS MOOT**. Any impending deadlines are **TERMINATED**.

**DONE AND ORDERED** in Miami, Florida, this 28th day of August, 2015.

                                        **BETH BLOOM**
                                        **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record